Thank you, Your Honor. I apologize for being a few minutes late. I have a newborn at home and things are a little crazy getting out of the house this morning. The issues are similar here. Keep your voice up. The issues here are similar to the prior case and I would like to emphasize. The difference, though, the critical difference is you're here on plain air review. Well, that's one critical difference, but the other difference is that there are, it is a significant difference. There's also a much lesser nexus to computer use in our case, which is something I would like to go over. So the difference is cut in two directions. I'd like to start, though, by emphasizing as prior counsel did just how intrusive these conditions actually are. Condition eight, the disclosure condition, it sounds somewhat benign on its face. It's just disclosure. All you have to do is tell the probation officer about the computers you want to use. But in practice, this is a significant restriction because in the real world, people constantly encounter computers and if they need to disclose to their probation officer the computer before they can use it, they are effectively precluded from using many computers that one would be expected to. Judge Goldberg Well, what requires disclosure in the way that seems to suggest advanced permission? Does this condition require prior disclosure or can you use it in... Justice Breyer It's been interpreted very strictly. Judge Goldberg ...something to the probation officer that day, maybe use the device to send the probation officer an email, hey, I'm on this device. Justice Breyer Your Honor, this Court has interpreted it very strictly. In a recent case, United States v. Mizrahi, the defendant was using a friend's cell phone at a restaurant. He was at a coffee shop and a friend handed him her cell phone. He didn't even manipulate it in any way. He just looked at a website on this phone. His probation officer was surveilling him, said, gotcha. And this Court sustained a revocation based on that fact pattern. So the fact that he touched a friend's cell phone and looked at a website was enough to revoke. And that's what happens. He happened to be a child pornography offender. But you have one case saying that just touching a friend's cell phone is enough to violate this condition. Then you have another case saying, oh, well, you know, we're going to relax this. Judge Goldberg How often does that really happen? I mean, that's a serious concern. It does add to the concern. But I stop and think, when was the last time I actually used somebody else's device? And if you know you don't use somebody else's device on a casual basis, and you can sort of understand if you know you can't use your own device, but if you want to look at child porn, you go look at somebody else's. Maybe that's the reason for giving some kind of notice in advance. Dr. Eric Lander When, Your Honor, I agree that that condition might make sense in a case involving a child pornography conviction. The question is whether imposing that sort of burden on someone who sent a few e-mails in the course of a crime. Judge Goldberg A few e-mails that led to a loss of something like $9 million. I mean, it was a pretty calculated scheme that required, at some level, the use of modern communications. Dr. Eric Lander I would dispute that the e-mails my client sent played an especially important role in this fraud. And if you don't mind... Judge Goldberg Would it have been accomplished without the use of the computer? Dr. Eric Lander Absolutely, Your Honor. Without my client's use of a computer. Obviously, he was an executive in a corporation, a multimillion-dollar corporation. Corporations use computers. There's no way this corporation could have been run without computers. But there's no significant usage of a computer by my client in this case. Judge Goldberg What about the wire transfers? Dr. Eric Lander There's no record evidence that my client was the person who used a computer to effect the wire transfers. Someone made wire transfers in the corporation. And the government cites a number of computer uses that it asserts on page 10 of its brief that my client carried out. It says he created fake invoices. It says he wired monies. It says he falsified accounting records. It says he transmitted falsified documents. But there is no record evidence that my client was the one who did those things. Someone in the company did it. And companies use computers. But I would encourage this Court to ask the government where in the record it says that my client was the one who used a computer to do these things. Because I wasn't able to find... Your Honor, that's just the government sentencing memo. That's not evidence. Respectfully, I don't think in this Court you can support a sentencing decision based on government representations. You need to be able to find it by preponderance of the evidence. Wasn't he convicted of a conspiracy? He was convicted of a conspiracy, yes, Your Honor. Why can't the judge look at the total circumstances of the offense? Because I think the fundamental question is whether this... Say here, there was a computer used in committing this conspiracy to commit wire fraud. And, you know, he needs to be subject to some restrictions there. And the answer, Your Honor, is that because the question that structures this Well, let me ask you this. What case would have told this judge this condition is unreasonable on this record? There's no directly on-point precedent. But why is it plain error to impose this condition? Why is it so plainly wrong that he shouldn't have done this? Because there wasn't any precedent on point in sales, either, where the Court found plain error. You know, it's plainly wrong to say that sending a few emails makes it reasonably necessary to read everything you do on the Internet for five years, to not let you use a computer at a library for five years, to not let you touch your friend's cell phone for five years. It's plainly wrong. And what it comes down to is that the evidence of computer usage in this case is so limited, it's so sparse, that these conditions are drastically disproportionate to what is reasonably necessary. I don't see how a fraud of this magnitude and this sophistication could possibly have been effected without the use of computers. Again, I don't dispute that someone in the corporation used computers to do all the things the government did. A co-conspirator. Let's say it's a co-conspirator. Right. But the question is whether it's a co-conspirator. There may have been an innocent employee responding to your client's directions. I mean, he was the number two person. Yes, Your Honor. So the fact that he doesn't have to touch the computer doesn't mean he's not the person that actually is effectively using the computer to accomplish the conspiracy. But it does mean that none of these conditions would help in any way to stop this sort of fraud. So if these exact same... Well, it's less likely he's going to be the number two person in a large corporation with lots of employees to carry out his bidding. Which I think is another reason why it's not necessarily reasonably necessary to stop him for five years from going on Facebook without reading everything he does. If he's going to have to do it himself, this seems to be a better way to find out what he's doing than the fact he's not likely to have a subordinate to give directions to. Your Honor, if sending... The sum total of the evidence in this record about my client's computer is... My client specifically is that he sent two emails. He sent an email saying, I want to get email addresses for this, and I authorize those costs. And then he apparently hid some computers which had legal... I'm sorry, he did what? He hid some servers of his company. He didn't hide his own computers. That's not what the record says. He hid some company computers. That's the sum total. And if that justifies five years in which everything he does electronically, every email he sends, every personals ad he answers, every political donations he makes, is monitored by a probation officer, then there really are no limits on these kinds of conditions. Because the internet is a completely pervasive part of modern life. It's ubiquitous. People use it for literally every aspect of their life, as the Supreme Court emphasized recently in Riley. And it's going to be the rare crime that has no minimal internet usage, where no emails are sent, where no text messages are sent, where no computer is involved in any way. This court would never authorize for any crime to let you read all of the defendant's mail correspondence, let you listen in on all of his phone calls. And it should be very hesitant to endorse that kind of pervasive monitoring and intrusion on an equally fundamental aspect of a defendant's life, when there's very little record evidence. What's your best case or cases that would have suggested to the district judge when he imposed these conditions, nine and ten, which relate to the search and the monitoring, that it was plainly wrong to do so? I think the case is saying you need a nexus. Your point here, there's no nexus. There's two emails. I mean, there's a sparse minimal nexus. And we shouldn't really consider the overall conspiracy and how this fraud was. I don't think that's relevant to whether it's reasonably necessary to stop my client from using a library computer in the future. That condition makes sense for a child pornography offender. I don't think it makes sense for an executive who used a computer because executives use computers at work. That's how they communicate with people. And the other good case for us is the Bear case that the government says actually requires a factual finding by the district court to justify a search condition. And there was no such factual finding here. Because it's not objected to. Well, yes, Your Honor, but Wolfchild, which recites in our brief, finds plain error when there's a factual finding supporting a condition, even if it's not objected to. It says if there's a factual finding requirement and the district court doesn't make a factual finding, that's plain error. So thank you, Your Honor. Good morning, and may it please the court. John Alex Romano on behalf of the United States. The district court did not plainly err by imposing computer-related conditions of supervised release. Those conditions are reasonably related to the defendant's offense conduct, and they will not amount to a greater deprivation of liberty than reasonably necessary to effectuate their purpose. With the court's permission, I'd like to begin by reviewing what some of the record evidence is concerning computer use and Internet use, because I do disagree with my opponent's characterization of the evidence showing that his client's conduct involved using computers and the Internet. Just to begin with, the court, of course, is familiar with the fraud. But in a nutshell, Defendant Young and his co-conspirators fraudulently induced the bank to increase the line of credit that had been extended to Defendant Young's employer by making false representations about the company's accounts receivables and the size of its inventories. The way they did this was by circulating money through about 20 different shell companies they had created to make it appear that Eastern Tools, Defendant Manufacturers, and then selling it to retailers. Well, the use of computers and the Internet was important to various stages of this scheme. For example, the fraudulent scheme relied on fake digital invoices, and the court can see examples of those invoices at pages 89 to 98 of the excerpts of records. And a couple of those fake computer-generated invoices actually have the name Louis Young, which is Defendant Young's alias, on those invoices. So I think it's a fair inference that he was aware that these computer-generated invoices were being created. You also have the creation of computer-generated logos for these shell companies. And the court can see, and this is a different email than the one that my opponent referred to, but somebody actually emails Defendant Young about six different computer-generated logos that had been created for these shell companies, and that's at pages ER 207 to 216. Then, of course, you have the direction to open up email accounts for the shell companies. And this isn't just a question of going, for example, registering for a Gmail address or a Yahoo email address, although I think that alone would be significant and constitute using the Internet. What you have here is actually registering Internet domain sites, paying domain maintenance fees. And there's an email exchange, which this court is probably familiar with, where it's at pages 205 to 206. And there are more examples. I think there's also some importance to be drawn from the fact that when the bank learns about the fraud, Defendant Young, and the bank goes and gets a TRO in joining the company from disposing of its inventory, Defendant Young not only helps move some of that inventory out of the state of California, but he also hides, tries to hide, the company's computers and passwords. And I think a fair inference of that, to draw from that act of concealment, is that he's aware that evidence of the fraudulent scheme is contained on computers. So we do think there is significant use of computers and the Internet by the conspirators, including by Defendant Young. And we think that justifies the conditions that were imposed in this case. I want to take advantage of the last argument. I see, I guess, you're from Washington, so I think through the other case that the Central District's Probation Office articulation, at least, of the computer monitoring program has changed somewhat in the wake of our court's Quinzone opinion. Let me just put to you whether the representation made by the government in the Garrett case out of the Central District is consistent with your understanding of that condition in this case. And in particular, whether the computer monitoring program referred to in condition, I think it's 10, is focused on online usage and doesn't extend to offline usage, a word program or something like that. That is correct, Your Honor. The government does read the condition in the same way that my counterpart did in the first case, consistent with Quinzone. The language of the monitoring condition in this case is almost identical to the language this court construed in Quinzone. So we do read it the same way, and I believe we indicated that. I think it's on the last page of our brief that we do read it in that light. I want to focus as well on the concern raised by your colleague with regard to what the, what I'll call the notification condition is, which is that the government is not able to provide a notification to the probation office of a given device. At what point is defendant required to give notice to the probation office of a given device? The condition eight says prior to the first use, Your Honor. So it would be before defendant Young actually uses the computer-related device. The pose is at the library, and the first thing he does is send an e-mail to the probation officer saying, I'm on this device. Is that a violation? Technically speaking, I think it could be. Whether or not the probation officer would, if he were just using that computer to e-mail the probation officer, I'm hard-pressed to think that the probation officer would do something after that. But the probation officer has the notification. It would be like asking your friend to use the computer to send an e-mail saying, Mr. Young is going to use this device. And then Mr. Young sits down and uses it. If you get somebody else to type that first message, you technically would satisfy the condition. If somebody else sent it, that is true. I believe that Mr. Young would have other ways to communicate with his probation officer. So there would be another way, barring the example of using a friend to send the e-mail. That's true. Technically speaking, if you read this language, it could be a violation. But if Mr. Young had already disclosed other computers and related devices that he was using, he could send an e-mail from that device to his probation officer and just say, I'm going to be using the computer at the library. And so the conditions in this case are just very different from the ones in sales and Barsoomian cases relied upon by my opponent, because they do not have that pre-approval requirement. It's just a notification requirement. Unless this court has any other questions about the other conditions or about other aspects of the case, I'm prepared to rest on the government's brief and ask, particularly because we're here on plain error review, that the court affirm the conditions of the supervisor's release being challenged. Thank you. Thank you. You can have a minute for rebuttal if you'd like. Thank you, Your Honor. On the plain error point, if it's not a plain error to say you have zero privacy in the most fundamental communications in your life, the tool that you use to talk to your family, the tool you use to express yourself politically, the tool you use to pursue intimate aspects of your life, you have zero privacy in any of that, because as a corporate executive, you sent a couple of emails during the course of a crime, which is going to be true of nearly every corporate crime. If that's not a plain error, then I don't know what is. This strikes me as an obvious plain error. It's obviously more than is reasonably necessary in light of the facts of this offense. Thank you.
judges: Parker, Paez, Clifton